IN RE SIXTO CHARNECO MURILLO, Respondent.

No. 70. Argued December 6, 1951.—Decided December 13, 1951.

*E. Báez García* for respondent. *Víctor Gutiérrez Franqui, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for the Department of Justice. The Bar Association appeared by brief.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Our reasons for disbarring Sixto Charneco Murillo permanently from the practice of his profession as an attorney and notary are clearly set forth in our opinion of June 22, 1948.[1] The charges were serious and in our opinion we commended his action in admitting the facts.

For the second time he prays now that we reinstate him. He states in his petition that for more than three years his attitude has been expiatory and that after pondering intensely on the enormity of the facts in which he became involved, he has sincerely repented of his action, has realized the magnitude of his error and has completely reformed; that ever since then he has taken refuge in the haven of his home, setting himself to work to support his family and is ready to discharge faithfully his duties as an attorney and notary if restored to the practice.

Following established precedents, we issued an order on November 6 setting the sixth of the current month at 2:00 p. m. to hear in open court the petitioner, counsel and other persons who wished to testify in regard to his request. We ordered at the same time that notice of the hearing be served on the Attorney General and on the Bar Association of Puerto Rico, in order that they might appear and make any report they deemed proper. On the appointed day the Attorney General appeared by brief with a lengthy report, together with innumerable affidavits made by all those persons whom the *Fiscal* of this Court had considered advisable to examine. According to this report fifty-five witnesses, among them

[1] See *In re Charneco*, 68 P.R.R. 893.

thirty-two lawyers and twenty-three laymen, were examined. The former included judges and prosecuting attorneys, a registrar of property, a notarial keeper of protocols and other public officials. The latter included the mayors of Aguadilla and Mayagüez, the president of the municipal assembly and the treasurer-school director of that town, in addition to a doctor, a pharmacist, an accountant, an engineer, a catholic priest, an evangelical minister, the president of the Rotary Club and the president of the Lions Club of Mayagüez, a police lieutenant, a Representative for Mayagüez and several merchants and industrialists, as well as other representatives of said city.

The Bar Association also appeared by brief.

■■ When a disbarred attorney prays for reinstatement, the gist of the question is not whether said attorney has atoned his guilt or whether he has been sufficiently punished, but rather whether at the time of his application he enjoys such a reputation as to justify his restoration to practice, that is, whether his moral integrity merits his rehabilitation. *In re González*, 60 P.R.R. 92; *In re Figueroa*, 38 P.R.R. 858; *In re Torregrosa*, 34 P.R.R. 301. Does the evidence before our consideration reveal that the petitioner meets that requirement? A detailed and thorough examination of the large number of affidavits offered by the prosecution, as well as of the latter's written report and of the written report submitted by the Bar Association through its President, leads us to an affirmative conclusion. The consensus of opinion as expressed by the many witnesses who without reservation testified on petitioner's conduct upon being examined by the *Fiscal* of this Court, is that he is a good man who lives unpretentiously with his family, that he is a good father and a good husband, as well as a peaceful citizen and a temperate man. As remarked by one of the witnesses, Charneco "came from the poor class and learned a profession with countless sacrifices and his closest contact is

with the poor class who love him, follow him and care for him and he feels for them, holds them in high esteem and respects them."

In his report the *Fiscal* analyzes many of the affidavits made before him and concludes that "although it is true that in an investigation of this nature it is impossible to reach an absolute and mathematical certainty . . . on petitioner's behavior which would render him fit to be readmitted to the practice of the profession . . . from a detailed examination . . . I reach the conclusion that ever since he was separated from the practice of his profession, Sixto Charneco Murillo has led an exemplary and toilsome life at home and in the community of Mayagüez and he has so regenerated as to deserve to be given the opportunity to practice once more his profession as an attorney and notary."

On the other hand, in the report submitted by the Bar Association of Puerto Rico we are informed that its Governing Board designated from among its members a committee presided by Luisa María Capó to investigate and report on the merits of petitioner's request, in order that, through its President, the Bar could appear and report accordingly. The report submitted to the Bar by the chairman of the committee is copied therein. It shows that she interviewed on this matter eighteen attorneys practicing their profession in the district of Mayagüez, and she states, among other things, that during the time of his disbarment he has well and faithfully obeyed the punishment imposed on him, severing himself completely from the practice of his profession and not intervening in any manner whatsoever in matters connected therewith; that he has lived decorously, earning his living and his family's support by lawful and honorable means, behaving morally and as befits a good citizen. The report from the chairman to the Bar ends by recommending petitioner's rehabilitation. And upon submitting it, the President of the Bar states that he has no objection to petitioner's reinstatement.

Furthermore, Angel Archilla Cabrera, Doctor in Divinity and Ordained Minister in the Presbitery of Puerto Rico, and Baudilio Vega, Mayor of Mayagüez and ex-district Chief of the Insular Police and who has known the petitioner ever since 1930, appeared personally and testified at the hearing of the motion. Both elaborated the views of the other witnesses and expressed their faith and confidence in Charneco. Petitioner himself also testified and stated under oath that if reinstated he will henceforth act most honestly, will observe an ethical conduct and will behave honorably and diligently in the practice of said profession.

The requirement established by our decisions for the rehabilitation of an attorney, we repeat, has been fully complied with. The evidence shows that Charneco enjoys the confidence of his fellow attorneys and neighbors. His reputation merits reinstatement. We trust that he will not disappoint all of those who have deposited their confidence in him, praising him in their testimony, and that, likewise, he will not frustrate the confidence we place in him upon honoring him again with the use of the gown. We hope that the ordeal he has been through will encourage him and that upon finding himself in a crossroad he will always remember that the straight way is not only the shortest, but also the one which in the long run and at all times leads more directly and decorously to the public respect.

Petitioner's request for reinstatement is granted and he is readmitted to the practice of our profession.